UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHARLES FOLEY,**

              **Plaintiff,**          **:**

     **v.**                          **Case No. 2:21-cv-5234**
                                       **Judge Sarah D. Morrison**
                                       **Magistrate Judge Kimberly A.**

**WILDCAT INVESTMENTS,**         **Jolson**
**LLC,**                       **:**

              **Defendant.**

OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Send Court-Approved Notice. (ECF Nos. 14, 15.) After the Motion was fully briefed, on May 19, 2023, the Sixth Circuit Court of Appeals issued a decision in *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) that changed the test for determining whether to issue Court-approved notice to potential plaintiffs in an action brought under § 216(b) of the FLSA. In response to the Court's Order, the parties filed supplemental briefing addressing the new *Clark* standard and the instant Motion. (ECF Nos. 29, 30.) For the reasons below, the Motion is **DENIED**.

I.    **BACKGROUND**

Mr. Foley seeks to send notice of this case to a class of all delivery drivers employed by Wildcat Investments, LLC, since November 5, 2018. (ECF No. 14.) Wildcat Investments operates Jimmy John's franchise stores in Ohio and other states. (Majewski Decl., ECF No. 31-1, ¶ 4.) Mr. Foley worked for Defendant from

approximately October 2013 to January 2020 at two of its Ohio locations. (Foley Decl., ECF No. 14-7, ¶¶ 4, 7.) He does not know how many Ohio stores Defendant operates but he heard his supervisor and other managers talk about the other locations. (*Id.* ¶ 7.)

As a delivery driver, Mr. Foley worked a "dual job," meaning that he "would deliver food to customers and receive tips, and would also work inside the store when not delivering." (*Id.* ¶ 9.) He was paid different hourly rates for each of his roles with Defendant. (*Id.*) Mr. Foley worked with other hourly delivery drivers that had the same or similar job duties and he frequently observed those other employees while working alongside them. (*Id.* ¶ 11.)

Defendant required its hourly delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, and other equipment necessary to complete their job duties. (*Id.* ¶ 10.) Mr. Foley alleges that he was never fully reimbursed for his necessary expenses. (*Id.*) As a result of Defendant's failure to fully reimburse him, Mr. Foley claims that he was not paid minimum wage and, when he occasionally worked over 40 hours in a week, he was not paid full overtime wages. (*Id.* ¶ 15; *see also* Compl., ECF No. 1, ¶¶ 38, 49.)

## II.  ANALYSIS

The FLSA mandates that employers pay a federal minimum wage and overtime to certain types of employees. 29 U.S.C. §§ 206(a), 207(a). Employees can sue for alleged violations of those mandates on "behalf of ... themselves and other

employees similarly situated." *Id.* § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Although the FLSA authorizes employees to proceed collectively, it does not prescribe all the procedures for doing so. Thus, courts must exercise discretion in implementing procedures for collective litigation:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. . .. It follows that, once [a collective] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71, 110 S. Ct. 482 (1989) (citations omitted).

### A. When litigation can proceed collectively.

Until recently, district courts within the Sixth Circuit have employed a "two-step certification" process in FLSA collective actions. *See Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 890 (S.D. Ohio 2016) (Marbley, J.). The first step of that process occurred early in litigation (usually before discovery was completed) and required that named plaintiffs make a "modest factual showing" that they are "similarly situated" to a proposed class of potential opt-in plaintiffs. *Id.* (quoting *Comer v. Walmart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006)). If the named plaintiffs met their modest burden, the proposed class was "conditionally certified," and plaintiffs could send court-supervised notice to potential opt-ins. *Id.* The second

step occurred after the close of discovery and warranted a closer examination of whether the named plaintiffs were "in fact, similarly situated" to plaintiffs who opted into the collective action. *Comer*, 454 F.3d at 547.

But the Sixth Circuit recently established a new standard for determining when to issue notice to potential class members.[1] In *Clark*, the Appellate Court rejected the "modest factual showing" standard in favor of the "strong-likelihood standard" used in preliminary injunction motions: "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id*. at 1011. This standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*.

If the plaintiffs meet their burden, the District Court will permit them to send notice to other employees advising them of their right to participate in the litigation. *Id*. A court's decision to allow notice to other employees is provisional—it "has zero effect on the character of the underlying suit." *Id*. at 1009 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75, 133 S.Ct. 1523 (2013)).

Step two of the collective determination is relatively unchanged by *Clark*. It

---

[1]The Sixth Circuit also rejected the use of the term "certification" in the context of FLSA collective actions: "unlike a Rule 23 class action, an FLSA collective action is not representative—meaning that 'all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.'" *Clark*, at 1009 (citing *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 402 (6th Cir. 2021).

occurs after the close of discovery and requires that the Court conclusively determine whether the named plaintiffs are "in fact similarly situated" to any opt-ins. *See id*. at 1009–10. After the conclusive determination that all plaintiffs are similarly situated, the opt-ins become parties to the suit and can proceed to trial collectively with the named plaintiffs. *Id*. at 1009 (citing 29 U.S.C. § 216(b) and *Canaday*, 9 F.4th at 403). To succeed at step two and proceed to trial or judgment as a collective, named plaintiffs must show that they are similarly situated to the opt-ins by a preponderance of the evidence. *See, e.g.*, *id*. at 1010.

## B. Whether other employees are "similarly situated."

Plaintiffs are similarly situated "when they suffer from a single, FLSA–violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Plaintiff-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). But employees can be "similarly situated" under the FLSA even if proof of a violation of one plaintiff's rights does not necessarily prove a violation of another's rights. *Id*. That is, plaintiffs are similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id*. Plaintiffs are required to show that their position is "similar, not identical" to the position of plaintiffs who opt into their collective action. *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (citations omitted). Similarly situated opt-ins "are those whose causes of action accrued in

approximately the same manner as those of the named plaintiff." *Id*.

Multiple factors guide the Court's determination of similarly situatedness, including whether opt-in plaintiffs "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the [named] plaintiffs were." *Clark*, at 1010 (citing *Pierce v. Wyndham Resorts, Inc.*, 922 F.3d 741, 745–46 (6th Cir. 2019). Whether plaintiffs are subject to different individualized defenses is a factor. *Pierce*, at 745 (citing *O'Brien*, at 584). *See also Monroe v. FTS USA, LLC*, 860 F.3d 389, 404 (6th Cir. 2017) ("Several circuits, including our own, hold that individualized defenses alone do not warrant decertification where sufficient common issues or job traits otherwise permit collective litigation."). Courts have also considered whether affidavits of potential plaintiffs were submitted and whether there is evidence of a "widespread" discriminatory plan by defendant. *Waggoner v. U.S. Bancorp*, 110 F. Supp. 759, 765 (N.D. Ohio 2015). No single factor is determinative; instead:

> The very point of the "similarly situated" inquiry is to determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Clark*, at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170).

### C. Mr. Foley has not demonstrated that there is a strong likelihood that other employees are similarly situated to him.

In support of his Motion, Mr. Foley relies on the pleadings and the exhibits attached to his Motion. (*See* ECF No. 15, PAGEID # 94.)

The Court will not consider Mr. Foley's unverified complaint in evaluating

6

whether there is strong likelihood that other employees are similarly situated to him. *See King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (allegations in an unverified complaint are not admissible evidence).

Turning to the exhibits attached to the Motion, the only exhibit that addresses the issue of similarly situatedness is Mr. Foley's declaration. (ECF No. 14-7.) That declaration does not show a strong likelihood that other employees are similarly situated to Mr. Foley for at least two reasons.

First, Mr. Foley's testimony about the pay practices for other drivers at the stores where he worked is based on hearsay. *See Lansberg v. Acton Enters.*, 2006 WL 3742221, at *3 (S.D. Ohio 2006) (Sargus, J.) (two affidavits based on hearsay provide no "colorable basis" for issuing notice to other employees). What Mr. Foley knows about how those other drivers were paid is from discussions he had with unnamed drivers at unknown times. (ECF No. 14-7, ¶ 16.)

Second, Mr. Foley has no knowledge or information as to the pay practices at any other store location. "[T]o warrant a finding that similarly situated employees exist, a plaintiff's declaration must at least allege facts sufficient to support an inference that she has actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were paid for overtime hours." *See O'Neal v. Emery Fed. Credit Union*, No. 1:13-CV-22, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013) (Dlott, C.J.). As he explained in his testimony, Mr. Foley learned only that Defendant has other locations in Ohio when overhearing conversations of his supervisor and other manager. (ECF No. 14-7, ¶ 7.) This does not support an

7

inference that Mr. Foley has any knowledge about how drivers were paid at other locations.

Moreover, Defendant responded to Mr. Foley's motion with undisputed evidence that undermines the notion that he is similarly situated to other drivers. Defendant admits that drivers were reimbursed in the same manner but asserts that reimbursement rates varied from driver to driver based upon the particular vehicle a driver used to perform his duties. (ECF No. 30, PAGEID # 193; Majewski Decl., ECF No. 31-1, ¶¶ 15–17.) To determine the amount a driver would be reimbursed, Defendant performed individualized approximations based on make, model, trim package, year, odometer reading, and condition of a driver's vehicle. (Majewski Decl., ECF No. 31-1, ¶ 18; Schaaf Decl., ECF No. 18-2, ¶¶ 5–8) Based on this evidence, Mr. Foley's claim is that *his particular* reimbursement rate was insufficient to cover his costs, taking his wages below minimum wage and causing his overtime to be underpaid.

Accordingly, Mr. Foley fails to demonstrate a strong likelihood the there is a class of delivery drivers that are similarly situated to him.

## III.    CONCLUSION

Plaintiff's Motion to Send Court-Approved Notice (ECF Nos. 14, 15.) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**